**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| MEREDITH CORPORATION, et al. | : |
| | : |
| | : |
| v. | :  Case No. 09 Civ. 9177 (PAE) |
| | : |
| SESAC, LLC, et al. | : |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD..........................................................................................................1

ARGUMENT.......................................................................................................................3

I. THE PROPOSED CLASS ACTION SETTLEMENT IS THE PRODUCT OF NUMEROUS ARMS-LENGTH NEGOTIATION SESSIONS, INCLUDING INVOLVEMENT BY MEDIATORS......................................................................3

II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...................3

III. THE NOTICE, SENT TO THE SETTLEMENT CLASS BY THE TMLC, SATISFIES DUE PROCESS....................................................................................8

IV. THE PLAN OF ALLOCATION IS REASONABLE ............................................9

CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

## CASES

Page(s)

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................................2, 3, 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG) (VVP), 2011 WL 2909162 (E.D.N.Y. July 15, 2011) .........................9

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................4

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................................................4

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................................2, 6

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................................9

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................................2

*In re Visa Check/MasterMoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*,
    Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96 (2d Cir. 2005)............................................................................................. *passim*

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................5

*In re WorldCom, Inc. ERISA Litig.*,
    No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004),
    *order clarified*, No. 02 Civ. 4816 (DLC), 2004 WL 2922083 (S.D.N.Y. Dec. 17, 2004).........2

*Int'l Union of Electronic, Electrical, Salaried, Mach. & Furniture Workers v. Unisys Corp.*,
    858 F. Supp. 1243 (E.D.N.Y. 1994) ......................................................................................2

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)...................................................................................................1

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................................4

## TABLE OF AUTHORITIES
## (cont'd)

*Meredith Corp. v. SESAC LLC*,
  No. 09 Civ. 9177 (NRB), 2011 WL 856266 (S.D.N.Y. Mar. 9, 2011).....................................6
  1 F. Supp. 3d 180 (S.D.N.Y. 2014).........................................................................................5

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).....................................................................................................7

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
  No. 08-CV-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)..............................4

### STATUTES

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

### OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995).........................................................2

# INTRODUCTION

After five years of complex antitrust litigation, the proposed class action settlement will resolve this litigation between local television stations and SESAC. As set forth in detail in the memoranda of law in support of the motions for preliminary approval and for an award of attorney's fees and expenses, the proposed settlement is fair, reasonable, and adequate. Under the settlement, local television stations will obtain conduct relief through 2035 in their licensing dealings with SESAC and refunds from a $58.5 million settlement fund (net of attorney's fees and expenses, $42.5 million) in proportion to the license fees they paid to SESAC from 2008 through 2014.[1]

Following the Court's October 31, 2014 Order granting preliminary approval of the settlement, the TMLC sent notice of the proposed settlement to all class members and published all of the filings in support of the settlement on its website. The settlement notice apprised class members of, among other things, their rights to opt out of the settlement class or to object to the settlement. The response has been unanimously positive: **not one class member has opted out** of the settlement class and **not one class member has objected** to the settlement.

Thus, it is respectfully requested that the Court grant final approval of the settlement.

# LEGAL STANDARD

Under Rule 23, "[a] court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

---

[1] The Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement [Dkt. No. 174] (hereinafter "Preliminary Approval MOL"), which this Court granted [Dkt. No. 205], the Joint Letter to Hon. Paul A. Engelmayer, dated Oct. 28, 2014 [Dkt. No. 201], the Memorandum of Law in Support of Class Counsel's Motion for Attorney's Fees and Expenses [Dkt. No. 208] (hereinafter "Attorney's Fees MOL"), and the supporting Declarations, are incorporated by reference herein. Capitalized terms herein have the same meaning as in those previous filings.

in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.42 (1995)). *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.").[2]

In the Second Circuit, courts examine the fairness, adequacy, and reasonableness of a class action settlement by reference to the "*Grinnell* factors." *Wal-Mart*, 396 F.3d at 117 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). These factors include: (1) the complexity, expense, and likely duration of litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendant to withstand a greater judgment; and (8) the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463 (citations omitted). "[N]ot every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances." *Telik*, 576 F. Supp. at 575 (internal quotation marks omitted). *See also Int'l Union of Electronic, Electrical, Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y. 1994) (the court need not apply any "single, inflexible test").

As shown below, the settlement easily satisfies this criteria and warrants final approval.

---

[2] This presumption is stronger when an independent mediator is used, as was done here. *See, e.g., In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004), *order clarified*, No. 02 Civ. 4816 (DLC), 2004 WL 2922083 (S.D.N.Y. Dec. 17, 2004) ("There is no basis to find that this settlement is tainted by collusion. A respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (same).

# ARGUMENT

## I. The Proposed Class Action Settlement Is the Product of Numerous Arms-Length Negotiation Sessions, Including Involvement By Mediators

As detailed in prior briefing, the proposed class action settlement is unquestionably the product of hard-fought and non-collusive negotiations by seasoned counsel, assisted by the involvement of experienced judges in this District serving as mediators. *See* Preliminary Approval MOL, at pp. 8-9. Representing the interests of the class members at those negotiations were the Named Plaintiffs, the TMLC, and Class Counsel, all of whom have experience in, or have represented, the local television industry in various matters, including performance license negotiations and litigations with SESAC and the other PROs. *See id.* at pp. 21-22; Attorney's Fees MOL, at pp. 1, 4. As a threshold matter, therefore, the settlement is entitled to a "presumption of fairness, adequacy, and reasonableness." *Wal-Mart*, 396 F.3d at 116.

Beyond this presumption, the settlement agreement itself reflects the fact that it is the product of a hard-fought, non-collusive negotiation. By way of example only, the settlement agreement contains heavily negotiated releases and termination rights with various carve-outs and conditions. *See* Settlement Agreement, Dkt. No. 175-1 (ESH Decl., Ex. 1), §§ 12(b), 13(b).

Thus, there can be no serious question that the settlement is arms-length with both sides represented by able, highly experienced counsel.

## II. The Settlement Is Fair, Reasonable, and Adequate

Evaluation of the proposed settlement under the *Grinnell* factors supports final approval.

### A. *The Complexity, Duration and Expense of Additional Litigation.*

As previously demonstrated, prosecuting this case against SESAC involved significant risks and the results achieved by the proposed settlement were far from guaranteed. Immediate conduct and monetary relief – years before a litigated outcome could have been realized –

weighs heavily in favor of final approval.  *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003) (prospect of long trial and appeals "weighs heavily in favor of approving the Settlements"), *aff'd sub nom.*, *Wal-Mart*, 396 F.3d 96; *In re Currency Conversion Fee Antitrust Litig.,* 263 F.R.D. 110, 124 (S.D.N.Y. 2009) (granting final approval where, absent settlement, the "action would have continued for years with motions for summary judgment, interlocutory appeals, a possible trial, and the inevitable post-trial motions and further appeals").  The proposed settlement has secured immediate and long-term industry-wide relief without the attendant risks and costs of class certification, trial, and appeals.

      B.     *The Reaction of the Settlement Class.*

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).  *See also Visa Check*, 297 F. Supp. 2d at 511 ("The second factor—the reaction of the class—may be the most significant factor in this inquiry.").  Courts in the Second Circuit have viewed the lack of objections as confirmation that the class approves the proposed settlement.  *See, e.g., Wal-Mart,* 396 F.3d at 118 ("absence of substantial opposition is indicative of class approval"); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *7 (E.D.N.Y. Aug. 27, 2013) ("The small number of objectors to the settlements weighs in favor of approval.").

Here, not a *single* class member has opted out of the settlement or objected to its terms.[3]  The unanimous positive reaction of class members to the proposed settlement bolsters final approval.  This is especially so given the sophistication and well-informed nature of the class.

---

[3] As a result, the proposed order granting final approval does not have a list of opt outs attached thereto.  *See* [Proposed] Final Judgment and Order of Dismissal, Dkt. No. 175-1 (Ex. 1 to ESH Decl., Ex. D thereto), ¶ 10.

C. *The Stage of the Proceeding and the Amount of the Discovery Completed.*

The advanced stage of this lawsuit also weighs heavily in favor of final approval. *See, e.g., Wal-Mart*, 396 F.3d at 118 (where several years of discovery, summary judgment, and mediation occurred prior to settlement, plaintiffs had "a thorough understanding of their case"); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *5 (E.D.N.Y. Oct. 23, 2012) (where discovery had been substantially completed and summary judgment and other dispositive motions had been decided, "[t]he Court concludes that the parties had a thorough understanding of their positions in this litigation at the time they agreed to settle and that this factor favors a finding that the settlements are fair").

At the time the settlement was reached, fact and expert discovery was complete and the Court had ruled on SESAC's motion for summary judgment. *See Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180 (S.D.N.Y. 2014). *See also* Preliminary Approval MOL, at pp. 3-4. Indeed, after that decision, the Court recognized that a point had been reached in the litigation where an official "time out" was in the "interests of the parties, and of a just outcome" so the parties could "explore and discuss whether there are terms on which this lawsuit can be amicably resolved." Dkt. No. 144. The parties were thus in a strong position to weigh the virtues of immediate settlement against the potential benefits and risks of proceeding with the pending class certification motion [Dkt. No. 163], a jury trial in March 2015, and the inevitable appeal.

D. *The Risks of Establishing Liability and Damages.*

SESAC denied any liability from the inception of this lawsuit and sought to dismiss this case twice. There was every reason to expect that SESAC, represented by able trial counsel, would continue to vigorously defend its licensing practices at trial, post-trial, and on appeal. While the Named Plaintiffs believe this case would be decided favorably to them based on the record they have developed against SESAC, one cannot ignore the modern-day litigation history

5

of music users challenging PRO licensing practices in antitrust lawsuits – all of which were ultimately unsuccessful.  *See Meredith Corp. v. SESAC LLC*, No. 09 Civ. 9177 (NRB), 2011 WL 856266, at *12 (S.D.N.Y. Mar. 9, 2011) (stating that "the previous antitrust challenges to the ASCAP and BMI licenses have been unsuccessful").  *See also* Attorney's Fees MOL, at p. 9.

The Named Plaintiffs would also have to prove damages and convince a jury to award appropriate compensation.  *See Wal-Mart*, 396 F.3d at 118 ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'") (quoting *NASDAQ*, 187 F.R.D. at 476).  *See also Visa Check*, 297 F. Supp. 2d at 511 (noting that proving damages to a jury is complex and difficult).  While the Named Plaintiffs believe that their economic expert, Professor Adam Jaffe, would persuasively testify as to the harm suffered by local television stations due to the challenged SESAC licensing practices, SESAC's economic expert, Dr. David Evans, disputed that conclusion.  *See* Preliminary Approval MOL, at pp. 13-14.  Thus, the trial would involve a "battle of the experts" on the issue of damages.

      E.     *The Risks of Maintaining the Class Action Through Trial.*

At the time of settlement, the Named Plaintiffs had filed their motion for class certification.  *See* Dkt. No. 163.  SESAC intended to contest class certification.  The settlement was reached before SESAC filed its opposition.  Although Named Plaintiffs are confident that class treatment is appropriate in this case, SESAC would have had the ability to seek an interlocutory appeal of any decision by this Court granting class certification under Rule 23(f), which, if accepted by the Second Circuit, would have risked derailing the March 2015 trial date.

F. *The Ability of SESAC to Withstand a Greater Judgment.*

As required by the settlement, *see* Settlement Agreement § 2(a), SESAC has already paid $58.5 million into an interest-bearing escrow account. The settlement secured for local stations as much money as was practically available from SESAC absent a favorable jury verdict. Class Counsel was advised by SESAC's counsel at the time of the settlement negotiations that a litigation set-aside for this case (as well as a similar antitrust lawsuit brought by the Radio Music License Committee) was substantially exhausted by this settlement.

G. *The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation.*

The determination of the reasonableness of a settlement is not susceptible to a simple mathematical equation. Rather, "'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As discussed previously, the combined long-term conduct relief and the significant monetary relief provide a substantial recovery to the settlement class. As for the conduct relief, for a period of *twenty years* SESAC will be: 1) obligated to offer a viable alternative to its blanket license in order to access the public performance rights to the music in SESAC's repertory; 2) barred from preventing (directly or indirectly) its affiliated composers and publishers from entering into direct licenses with local stations; and 3) prevented from threatening local stations with copyright infringement lawsuits during license negotiations. *See* Preliminary Approval MOL, at pp. 5-6. In addition, although not the same as the "rate courts" that oversee the ASCAP and BMI consent decrees, if the terms and conditions (such as fees) of industry-wide through to the viewer public performance licenses to the SESAC repertory cannot

7

be agreed upon with the TMLC, the matter of reasonable license fees can be submitted for resolution in binding arbitration. *Id.*

As for the monetary relief, if the Court grants the request for attorney's fees and costs, the remaining $42.5 million in the settlement fund to be paid to local stations for alleged overcharges in license fees paid to SESAC is in line with actual damages estimates calculated by Named Plaintiff's experts. *See* Preliminary Approval MOL, at pp. 13-14. The recovery as a percentage of the license fees at issue – in effect, the overcharge rate – exceeds that of most antitrust settlements. *Id.* at 13-14 & n.18 (citing cases).

This substantial and immediate relief compares favorably to the alternative forms of relief that would be sought, but not guaranteed, were the case to proceed to trial and beyond. For example, for private plaintiffs (as opposed to the government) to obtain twenty years of conduct relief that parallels some key aspects of the ASCAP and BMI consent decrees is unprecedented.

*      *      *

For all of these reasons, the settlement meets and easily exceeds the *Grinnell* factors.

**III.    The Notice, Sent to the Settlement Class by the TMLC, Satisfies Due Process**

As discussed previously, the settlement notice [Dkt. No. 175-1 (Ex. 1 to ESH Decl., Ex. E thereto)] that the Court ordered to be disseminated to the settlement class [Dkt. No. 205] satisfies the requirements of Due Process and Rule 23. *See* Preliminary Approval MOL, at pp. 22-23. In clear and concise language, the notice "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the right to opt out of the settlement class and to object to the settlement or the request for the award of attorney's fees and expenses. *Wal-Mart*, 396 F.3d at 114. *See also id.* at 113 (adequacy of settlement notice "is measured by reasonableness").

Leveraging its database of contact information as well as a list of the mailing addresses of each member of the settlement class provided by SESAC, *see* Settlement Agreement § 10(a), the TMLC sent individual class notice to the approximately 1,200 local television stations in the settlement class. As ordered by the Court, by November 5, 2014, the TMLC had sent the settlement notice to over 2,700 representatives via first class direct mail and over 600 station representatives via email. *See* Declaration of Teeravat Pawasittichot, filed contemporaneously herewith, dated Dec. 22, 2014, ¶ 3. The settlement notice was sent to every class member via first class direct mail and, because in many cases the TMLC had more than one contact person at the stations, many stations received more than one notice. *Id.* As a further supplement, half of the settlement class received the settlement notice via email as well. *Id.* Finally, the TMLC published the notice on its website, along with all other materials filed in support of settlement approval and the request for reimbursement of attorney's fees and expenses. *Id.* at ¶ 4. The TMLC website has regularly been used for years to update stations about this litigation and other developments related to the TMLC's dealings with SESAC, ASCAP, and BMI. *Id.* at ¶ 1.

## IV.   The Plan of Allocation Is Reasonable

"'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2011 WL 2909162, at *5 (E.D.N.Y. July 15, 2011) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id. See also Visa Check*, 297 F. Supp. 2d at 518-19 (same).

Under the Plan of Allocation, the TMLC will allocate the settlement fund using a methodology that fairly compensates each local station for its alleged overpayment of SESAC license fees based on its *pro rata* share of total license fees paid to SESAC from 2008 to 2013 and paid or payable to SESAC for 2014.  *See* Dkt. No. 175-1 (Ex. 1 to ESH Decl., Ex. F thereto).  *See also* Joint Letter to Hon. Paul A. Engelmayer, dated Oct. 28, 2014, Dkt. No. 201, at p. 2 ("[T]he size of the settlement fund was increased to account for the alleged overpayments by the [owned and operated stations of the ABC and CBS television networks as well as NBCUniversal Media, LLC] and the proposed allocation plan distributing those monies treats [them] no differently than any other class members.").  Again, no objections have been submitted by settlement class members, including to this refund methodology from the settlement fund.

Thus, the proposed Plan of Allocation is reasonable.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant final approval.

Dated: December 22, 2014
New York, New York

Respectfully submitted,

 /s/ Steven A. Reiss
STEVEN A. REISS
R. BRUCE RICH
BENJAMIN E. MARKS
ERIC S. HOCHSTADT
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, N.Y.  10153
(212) 310-8000

CARRIE MAHAN ANDERSON
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W.
Washington, D.C.  20005
(202) 682-7000

*Counsel for the Plaintiffs
and the Settlement Class*